Lalitha D. Madduri (CA Bar No. 301236)
lmadduri@elias.law
Christopher D. Dodge* (DC Bar No. 90011587)
cdodge@elias.law
Max Accardi* (DC Bar No. 90021259)
maccardi@elias.law
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498

Abha Khanna* (WA Bar No. 42612)
akhanna@elias.law
Tyler L. Bishop (CA Bar No. 337546)
tbishop@elias.law
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Omar Qureshi (CA Bar No. 323493)
omar@qureshi.law
Max Schoening (CA Bar No. 324643)
max@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478
F: (213) 277-8989

*Counsel for Proposed Intervenor-Defendant
DCCC*

*\* Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCH NOYES, HOLDEN LOMELI, and ANTHONY MCBROOM,<br><br>    Plaintiffs,<br><br><br>    v.<br><br><br>GAVIN NEWSOM, in his official capacity as the Governor of California; SHIRLEY WEBER, in her official capacity as California Secretary of State,<br><br>    Defendants. | Case No: 2:25-cv-11480-JLS-WLH-KKL<br><br>**DCCC'S NOTICE OF MOTION AND MOTION TO INTERVENE AS DEFENDANT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: Friday, February 27, 2026<br><br>Time: 10:30 a.m.<br><br>Courtroom: 8A |

ii

## <u>NOTICE OF MOTION AND MOTION TO INTERVENE</u>

The Democratic Congressional Campaign Committee ("DCCC") respectfully requests that this Court grant it leave to intervene as a defendant in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, grant it leave to intervene on a permissive basis under Federal Rule of Civil Procedure 24(b).

In support of its Motion, DCCC submits and incorporates the below Memorandum of Points and Authorities, a declaration by William Van Nuys III on behalf of DCCC (Exhibit A), a Proposed Answer submitted pursuant to Rule 24(c) (Exhibit B), a Proposed Order (Exhibit C), and correspondence with Plaintiffs' counsel regarding this motion (Exhibit D).[1]

Pursuant to Local Rule 7-3, counsel for DCCC contacted counsel for the existing parties on January 22, 2026. Counsel for Defendants stated that Defendants do not oppose the Motion. Counsel for Plaintiffs asked to confer the following week to discuss "what interest, if any, the DCCC has in [the] Noyes case." Ex. D. Counsel for DCCC has since made several attempts to confer telephonically or via videoconference with Plaintiffs' counsel, but has been informed by Plaintiffs' counsel that they are unable to confer until later this week. Counsel have in the meantime communicated by email, in which counsel for DCCC explained both DCCC's interest in this case and its role in related litigation also pending before this Court, *Tangipa v. Newsom,* 2:25-cv-10616-JLS-WLH-KKL, and provided the declaration attached to this motion explaining DCCC's significant interests

---

[1] While DCCC submits a Proposed Answer as required by Rule 24(c), it reserves the right to file a Rule 12(b) motion in accordance with any schedule set by the Court or agreed to be the existing parties.

iii

in defending the Prop 50 map. *Id*. As of this filing, counsel for Plaintiffs have not provided their position on DCCC's motion.

Because the stay in this case depends on the timing of the Supreme Court's order on the *Tangipa* plaintiffs' application for injunction pending appeal, and because that application will be fully briefed as soon as Thursday, January 29, 2026, DCCC now timely files its motion to intervene.

Because of the Court's familiarity with the Prop 50 map and DCCC's role in its adoption from the *Tangipa* litigation, DCCC respectfully submits that no hearing on the motion is necessary and requests that the Court grant the motion without any hearing. Alternatively, DCCC respectfully requests that the Court set a hearing for this Motion (if necessary) as soon as practicable and before this case proceeds further.

1       Dated: January 27, 2026               Respectfully submitted,

2

3                                    /s/ Lalitha D. Madduri

Lalitha D. Madduri (CA Bar No. 301236)

Christopher D. Dodge* (DC Bar No. 90010127)

Max Accardi* (DC Bar No. 90021259)

**ELIAS LAW GROUP LLP**

250 Massachusetts Ave. NW, Suite 400

Washington, DC 20001

T: (202) 968-4652

F: (202) 968-4498

lmadduri@elias.law

cdodge@elias.law

maccardi@elias.law

Abha Khanna* (WA Bar No. 42612)

Tyler L. Bishop (CA Bar No. 337546)

**ELIAS LAW GROUP LLP** 1700 Seventh

Avenue, Suite 2100

Seattle, WA 98101

T: (206) 656-0177

akhanna@elias.law

tbishop@elias.law

Omar Qureshi (CA Bar No. 323493)

Max Schoening (CA Bar No. 324643)

**QURESHI LAW PC**

700 Flower Street, Suite 1000

Los Angeles, CA 90017

T: (213) 786-3478

omar@qureshi.law

max@qureshi.law

*Counsel for Proposed Intervenor-Defendant DCCC*

\* *Pro hac vice application forthcoming*

v

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... vii

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................ 2

LEGAL STANDARD.................................................................................. 3

ARGUMENT .............................................................................................. 5

    I.     DCCC is entitled to intervene as a matter of right.....................5

          A.     This motion is timely. ........................................................ 5

          B.     DCCC has substantial, protectable interests that are threatened by the relief Plaintiffs seek. ................................................ 6

          C.     The existing parties do not adequately represent DCCC.................. 9

    II.    DCCC should, alternatively, be granted permissive intervention. ........... 12

CONCLUSION........................................................................................ 13

vi

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                 **Page(s)**

3

*Arakaki v. Cayetano*,

4
   324 F.3d 1078 (9th Cir. 2003) ................................................................. 3, 4

5

*Ariz. All. for Retired Ams. v. Hobbs*,

6
   No. 2:22-cv-01374-GMS, 2022 WL 4448320 (D. Ariz. Sep. 23, 2022) ................... 13

7

*Barke v. Banks*,

8
   No. 8:20-cv-00358-JLS-ADS, 2020 WL 2315857 (C.D. Cal. May 7, 2020) ............ 10

9

*Bellitto v. Snipes*,
   No. 0:16-cv-61474-BB, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ...................... 11

10

11
*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) ..................................................................... 9, 11, 12

12

*Bost v. Ill.s State Bd. of Elections*,

13
   No. 24-568, 2026 WL 96707 (U.S. Jan. 14, 2026) ...................................... 8

14

*Brumfield v. Dodd*,

15
   749 F.3d 339 (5th Cir. 2014) ............................................................ 6

16

*California ex rel. Lockyer v. United States*,

17
   450 F.3d 436 (9th Cir. 2006) ............................................................ 7

18

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,

19
   42 F.4th 1013 (9th Cir. 2022) ....................................................... 12, 13

20

*Chiles v. Thornburgh*,

21
   865 F.2d 1197 (11th Cir. 1989) ......................................................... 6

22
*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ....................................................... 7, 9, 10

23

24
*Democratic Party of Va. v. Brink*,
   No. 3:21-CV-00756-HEH, 2022 WL 330183 (E.D. Va. Feb. 3, 2022) ................... 13

25

*Freedom from Religion Found. v. Geithner*,

26
   644 F.3d 836 (9th Cir. 2011) ............................................................ 5

27

28

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ......................................................... 10

*GHP Mgmt. Corp. v. City of Los Angeles*,
    339 F.R.D. 621 (C.D. Cal. 2021) ..................................................... 10

*Hoopa Valley Tribe v. U.S. Bureau of Reclamation*,
    648 F. Supp. 3d 1196 (E.D. Cal. 2022) ........................................... 9

*Issa v. Newsom*,
    No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) 5, 7, 10

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) ........................................................... 10

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ........................................................... 11

*Loyd v. United States*,
    No. 5:23-cv-00381-SVW-SSC, 2024 WL 3009014 (C.D. Cal. Jan. 3, 2024) .............. 5

*New Cingular Wireless PCS, LLC v. Kootenai County*,
    No. 2:23-cv-00124-AKB, 2023 WL 7283153 (D. Idaho Nov. 2, 2023) ...................... 8

*Nielsen v. DeSantis*,
    No. 4:20-cv-00236-RH-MJF, 2020 WL 6589656 (N.D. Fla. May 28, 2020) ............ 13

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ........................................................... 5

*Or. Nat. Desert Ass'n v. Shuford*,
    No. 06-cv-242, 2006 WL 2601073 (D. Or. Sep. 8, 2006) ........................................... 6

*Owen v. Mulligan*,
    640 F.2d 1130 (9th Cir. 1981) ........................................................... 7

*Paher v. Cegavske*,
    No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ..... 7, 13

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ........................................................... 8

*S.J. Mercury News, Inc. v. U.S. Dist. Ct.*,
    187 F.3d 1096 (9th Cir. 1999) ........................................................... 4

*Soltysik v. Padilla*,
No. 2:15-cv-07916-AB-GJS, 2015 WL 13819001 (C.D. Cal. Dec. 11, 2015) ............ 8

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ................................................................ 4, 11

*Thomas v. Andino*,
335 F.R.D. 364 (D.S.C. 2020) ...................................................................... 13

*United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc'y*,
819 F.2d 473 (4th Cir. 1987) ....................................................................... 11

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ......................................................................... 4

*W. States Trucking Ass'n v. Becerra*,
No. 5:19-cv-02447-CAS-KK, 2020 WL 1032348 (C.D. Cal. Mar. 2, 2020) .............. 5

*W. Watersheds Project v. Haaland*,
22 F.4th 828 (9th Cir. 2022) ...................................................................... 4, 5

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) .................................................................... 6, 7

*Yniguez v. Arizona*,
939 F.2d 727 (9th Cir. 1991) ......................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 24 ..................................................................................... 3, 12

7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024) .................. 9

## **INTRODUCTION**

This case is the second attempt (so far) to recast Proposition 50—a ballot initiative that redrew California's congressional map to create a partisan advantage for Democratic Party candidates—as racial discrimination. In a parallel case, *Tangipa v. Newsom*, this Court recently denied the plaintiffs' motion for a preliminary injunction, finding insufficient evidence to suggest that any motivation other than partisan gain underlay the Prop 50 map. *See* Order Den. Prelim. Inj., *Tangipa*, No. 2:25-cv-10616-JLS-WLH-KKL (C.D. Cal. Jan. 14, 2026), ECF No. 216 (hereinafter, "*Tangipa*"). As the Court there explained, a "mountain" of evidence reflects Prop 50's partisan goals in contrast to the "molehill" of evidence presented by the *Tangipa* challengers. *Id.* at 4.   Proposed Intervenor the Democratic Congressional Campaign Committee ("DCCC") sought and obtained leave to intervene as a defendant in *Tangipa*, based on its vested interests in improving the electoral chances of Democratic congressional candidates, and its organizational involvement in drawing the Prop 50 map. *See generally Tangipa*, ECF No. 20. Notably, in view of DCCC's strong and indisputable interest in the Prop 50 map, the Plaintiffs in *Tangipa* did not even oppose intervention, which the Court quickly granted. *See id.* at iii.

DCCC now seeks to intervene in this case—which the *Noyes* Plaintiffs themselves say raises "identical" issues as in *Tangipa*, *see* ECF No. 6 at 1—to vindicate the same interests this Court recognized in *Tangipa*. DCCC is entitled to intervene as of right in this case because Plaintiffs' lawsuit directly threatens the interests of DCCC, which is the national congressional campaign committee for the Democratic Party, responsible for promoting the electoral prospects of Democratic congressional candidates in California and across the country. Proposition 50 bears directly on DCCC's ability to elect Democratic candidates in California's congressional districts and achieve a majority in the House of Representatives, and DCCC was directly involved in the process of developing and advocating for Prop 50. The organization's interests in this case are

1

therefore both of paramount importance and self-evident. The threat this lawsuit poses to DCCC's interests is thus beyond dispute.

DCCC also easily meets the other elements to be entitled to intervene as a matter of right under Rule 24(a)(2). It has moved in a timely manner, especially given that this case has been stayed due to pending proceedings in *Tangipa*. DCCC also has clear and significant interests at stake—the preservation of Proposition 50—that will be impaired by the relief Plaintiffs seek. And it cannot be assured of adequate representation by the existing Defendants who, as public officers sued in their official capacities, lack DCCC's partisan and competitive interests.

The requirements for permissive intervention under Rule 24(b) are also clearly met: DCCC has moved promptly, will defend the suit based on common issues of fact and law as the existing parties, and its involvement will not cause prejudice. Indeed, the Court's order in *Tangipa* underscores that DCCC will in fact contribute to the resolution of this matter—for instance, the Court relied significantly on two experts retained by DCCC, Drs. Jonathan Rodden and Maxwell Palmer, in its analysis. *See Tangipa*, ECF No. 216. For these reasons, the Court should grant DCCC's motion.

## **BACKGROUND**

Proposed Intervenor DCCC is the national congressional campaign committee for the Democratic Party. *See* Ex. A, Van Nuys Decl. ¶ 3. DCCC's mission is to promote the success of the Democratic Party in congressional elections and ultimately to secure a majority for the Democratic Party in the U.S. House of Representatives. *See id.* It pursues this mission by, among other things, recruiting candidates, raising funds to support candidates, and helping candidates achieve electoral success by offering strategic guidance and bringing organizational resources to bear on the campaign trail. *Id.* DCCC engages in this work throughout California, where it strives to help Democratic Party candidates win office and contribute towards a Democratic Party majority in the House of Representatives. *Id.* ¶¶ 2–3.

2

As part of its mission, DCCC naturally has an interest in redistricting efforts throughout the country. *Id.* ¶ 3. The aggressive redistricting efforts that have taken place in Texas and other Republican-controlled states at the President's direction threaten to frustrate DCCC's goal of promoting the electoral success of Democratic Party candidates and the ability of the Democratic Party to obtain a House majority. *See id.* ¶ 5. Accordingly, when DCCC became aware that elected leaders in California were considering a potential redistricting plan that could benefit Democratic Party candidates and were soliciting public input, it responded by submitting a proposed congressional district map to the California Legislature. *Id.* ¶¶ 6–9.

Specifically—and as borne out by discovery in *Tangipa*—DCCC learned in the summer of 2025 that Paul Mitchell and his company Redistricting Partners had prepared a draft map Congressional map of California. *Id.* ¶¶ 7–8. DCCC saw a version of the map, supported revisions to increase Democratic performance, and then purchased and submitted the revised map to the California Legislature through the public input process. *Id.* ¶¶ 9–13. That revised map was later incorporated into Proposition 50, which California voters resoundingly approved on election day. *Id.* ¶ 14.

The map approved by California voters thus reflects DCCC's goals of improving the electoral prospects of Democratic congressional candidates in California and combatting the redistricting efforts undertaken by Texas and other Republican-led states at the behest of President Trump. *See id.* ¶¶ 3, 5, 9. Consistent with these interests, DCCC's chair issued a statement the day after the election commending California's voters for helping to create a "path to the Democratic majority." *Id.* ¶ 17.

## LEGAL STANDARD

Under Rule 24, a party may intervene either as a matter of right or with permission of the Court. *See* Fed. R. Civ. P. 24. "Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). "A liberal policy in favor of intervention serves both efficient resolution of

3

issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995)). When reviewing a motion to intervene, courts must "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

Under Rule 24(a)(2), an applicant has a right to intervene if it satisfies four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki*, 324 F.3d at 1083 (discussing intervention under Fed. R. Civ. P. 24(a)(2)). The Ninth Circuit has adopted a policy of "interpret[ing] these requirements broadly in favor of intervention," guided by "practical considerations, not technical distinctions." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). An applicant that satisfies each of these requirements must be granted intervention. *Arakaki*, 324 F.3d at 1083.

Federal courts also may grant permissive intervention under Rule 24(b); such motions are "directed to the sound discretion of the district court." *S.J. Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999). Only two factors must be satisfied where, as here, the intervening party does not intend to assert additional "new claims" for relief: (1) the motion must be timely and (2) the applicant's claim or defense

4

1    must have a question of law or fact in common with the main action. *Freedom from*
2    *Religion Found. v. Geithner*, 644 F.3d 836, 843–44 (9th Cir. 2011).[1]

3                                **ARGUMENT**

4    **I.    DCCC is entitled to intervene as a matter of right.**

5         **A.    This motion is timely.**

6         DCCC's motion is indisputably timely. To make this determination, courts in this
7    Circuit must consider the totality of the circumstances, including "(1) the stage of the
8    proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties;
9    and (3) the reason for and length of [any] delay." *W. Watersheds Project*, 22 F.4th at
10   835–36 (quoting *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)).

11        These factors support a finding of timeliness here. No "substantive proceedings
12   have occurred" in this case to date. *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020
13   WL 3074351, at *2 (E.D. Cal. June 10, 2020) (permitting DCCC to intervene in election-
14   law challenge brought by Republicans); *see also W. States Trucking Ass'n v. Becerra*,
15   No. 5:19-cv-02447-CAS-KK, 2020 WL 1032348, at *2 (C.D. Cal. Mar. 2, 2020) (noting
16   that a "motion to intervene is generally considered timely if it is filed soon after a
17   complaint, prior to any substantive proceedings" (citing *Nw. Forest Res. Council v.*
18   *Glickman*, 82 F.3d 825, 837 (9th Cir. 1996))). In fact, this case has been stayed until the
19   Supreme Court issues an order, or the time for appeal expires, in the related *Tangipa*
20   case. *See* Order, ECF No. 44. For the same reasons, DCCC's intervention would also not
21   require the Court to amend any scheduling order because no such order has been entered.
22   *See Loyd v. United States*, No. 5:23-cv-00381-SVW-SSC, 2024 WL 3009014, at *1 (C.D.
23   Cal. Jan. 3, 2024) ("A scheduling order has not yet issued, so Plaintiff's motion is

24
25
26
27   [1] DCCC submits a Proposed Answer as required by Rule 24(c), *see* Ex. B, but reserves
     the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of
28   Civil Procedure.

timely."). In sum, these proceedings remain at the earliest stage, there has been no delay on DCCC's part, and there is no risk of prejudice to the existing parties.

Additionally, DCCC agrees to abide by any future deadlines set by the Court, including as to any preliminary injunction briefing. That commitment further eliminates any conceivable prospect of prejudice. *E.g.*, *Or. Nat. Desert Ass'n v. Shuford*, No. 06-cv-242, 2006 WL 2601073, at *2 (D. Or. Sep. 8, 2006) (finding no prejudice where intervenors moved promptly and agreed "to comply with the court's discovery and pretrial scheduling order"), *aff'd sub nom. Or. Nat. Desert Ass'n v. McDaniel*, 405 F. App'x 197 (9th Cir. 2010).

## B. DCCC has substantial, protectable interests that are threatened by the relief Plaintiffs seek.

DCCC also satisfies the "closely related" second and third requirements for intervention because it has significant protectable interests in this lawsuit, and the relief Plaintiffs seek threatens to impair those interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). As the Ninth Circuit has explained, under Rule 24(a)(2), "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). Consistent with this liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (citation modified) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Furthermore, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (quoting 6 *Moore's Federal Practice* § 24.03[2][c] (3d ed. 2008)).

6

Once a movant has shown some protectable interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" the intervenor's interests. *Lockyer*, 450 F.3d at 442. The intervenor need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)). In other words, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (citation modified).

DCCC has at least two significant interests that are at risk of impairment from the relief Plaintiffs seek—which are substantially the same interests that prompted DCCC to seek, and the Court to grant, intervention in the related *Tangipa* case. *See Tangipa*, ECF Nos. 20, 26. *First*, DCCC is an organization dedicated to advancing the electoral prospects of Democratic Party congressional candidates, so it naturally has an interest in the validity of a congressional map that aids the electoral prospects of Democrats. *See* Ex. A, Van Nuys Decl. ¶¶ 3–4. Other courts have considered this precise interest in evaluating motions to intervene filed by DCCC, and concluded that DCCC's interest in promoting the electoral success of Democratic congressional candidates warrants intervention as of right. *E.g.*, *Issa*, 2020 WL 3074351, at *3 (holding DCCC could intervene as of right under Rule 24(a)(2) in a challenge to a California executive order concerning mail-in voting, in part because of the DCCC's interest in "advancing [the Democrats'] overall electoral prospects"); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (similarly granting a motion to intervene by DCCC in a suit concerning election rules based on DCCC's interest in "ensur[ing] the election of Democratic Party candidates"). Indeed, the Ninth Circuit has long recognized that winning elections is a judicially cognizable interest in the context of Article III standing. *See Owen v. Mulligan*, 640 F.2d 1130, 1132–33 (9th

7

Cir. 1981) (holding that "the potential loss of an election" is a sufficient injury to give rise to Article III standing); *cf. Bost v. Ill.s State Bd. of Elections*, No. 24-568, 2026 WL 96707, at *4 (U.S. Jan. 14, 2026) (recognizing that candidates—who form a key part of DCCC's constituency—have an "obvious personal stake" in how elections are administered). Accordingly, DCCC has an interest in this case that not only satisfies Rule 24, but also the "more stringent" requirements of Article III standing. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (observing that satisfying Article III standing "compels the conclusion" that a party also satisfies Rule 24); *see also Bost*, 2026 WL 96707 at *3– 4. The relief Plaintiffs seek would directly impair DCCC's interest in promoting Democrats' electoral prospects by invalidating a congressional map that favors Democratic Party candidates.

*Second*, DCCC supported the efforts of Proposition 50, including by purchasing and submitting a version of Mitchell's map to the California Legislature—which the California Legislature incorporated into legislation and approved, and which California voters ultimately resoundingly endorsed. *See* Ex. A, Van Nuys Decl. ¶¶ 8–14. That alone warrants intervention under Ninth Circuit law. As the court explained in *Prete v. Bradbury*, "a public interest group that has supported a measure . . . has a 'significant protectable interest' in defending the legality of the measure." 438 F.3d 949, 954 (9th Cir. 2006). The same logic applies here: DCCC supported and continues to support Proposition 50, and "an adverse judgment might impede or impair" DCCC's interest in Proposition 50's legality. *Id.* at 955; *see also Soltysik v. Padilla*, No. 2:15-cv-07916-AB-GJS, 2015 WL 13819001, at *2 (C.D. Cal. Dec. 11, 2015) (finding a group that advocated for a proposition concerning open primaries had a "significant protectable interest" in defending the proposition's legality in litigation); *New Cingular Wireless PCS, LLC v. Kootenai County*, No. 2:23-cv-00124-AKB, 2023 WL 7283153, at * 4 (D. Idaho Nov. 2, 2023) (finding a group which "played an important role" in advocating for a measure had a "significant protectable interest" in an action challenging that measure).

In sum, DCCC has a strong interest in promoting the electoral prospects of Democratic candidates for the House of Representatives and defending the legality of the congressional map that it helped enact into law. An adverse judgment in this litigation would jeopardize each of these interests. DCCC therefore readily meets the second and third requirements for intervention as of right.

## C.    The existing parties do not adequately represent DCCC.

DCCC cannot be assured adequate representation of its distinct interests at stake in this matter if it is denied intervention—for the same reasons it articulated in the related *Tangipa* case. *See Tangipa*, ECF No. 20. The Ninth Circuit "stress[es] that intervention of right does not require an absolute certainty . . . that existing parties will not adequately represent [an intervenor's] interests." *Citizens for Balanced Use*, 647 F.3d at 900. Accordingly, "the burden of making this showing is minimal" and is "satisfied if the applicant shows that representation of its interests may be inadequate." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Courts are also "liberal in finding" this requirement satisfied, recognizing that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024).

Here, DCCC has unique partisan, competitive, and reputational interests that may not be adequately represented by Defendants, who are sued as governmental officers responsible for impartially enforcing federal and California law.[2] *See* Ex. A, Van Nuys Decl. ¶¶ 3–4. DCCC's core interest is in preserving a congressional map that maximizes the electoral prospects for Democratic congressional candidates and increases the

---

[2] There is also no dispute that Plaintiffs—who seek relief setting aside a congressional map that DCCC supports—will not adequately represent DCCC's interests.

likelihood of Democrats retaking control of the House of Representatives—full stop. In contrast, Governor Newsom and Secretary Webster are responsible for implementing Proposition 50 as part of their official duties.

This mismatch between a private litigant's parochial interests and a governmental party's public interests and duties is well-recognized. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)); *see also GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (explaining courts "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented" (quoting *Arakaki*, 324 F.3d at 1087)); *Barke v. Banks*, No. 8:20-cv-00358-JLS-ADS, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (collecting cases).

That divergence is particularly stark in election-law cases, where political groups like DCCC are singularly focused on preserving their own partisan advantage. As another district court in California explained, in election disputes like this one "Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws," while groups like DCCC are "concerned with . . . advancing [their] overall electoral prospects." *Issa*, 2020 WL 3074351, at *3 (granting

10

1   DCCC intervention). The Fifth Circuit has similarly reasoned that governmental

2   defendants are not likely to adequately represent political committees because the latter

3   have "private interests different in kind from the public interests of the State or its

4   officials." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022); *see*

5   *also Berg*, 268 F.3d at 823 (explaining any presumption of adequate representation is

6   rebutted when parties "do not have sufficiently congruent interests"); *Bellitto v. Snipes*,

7   No. 0:16-cv-61474-BB, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding

8   adequate representation not guaranteed where existing defendant was "an elected

9   official" with "interests" that "may not be aligned" with an intervenor's).[3]

10          The Supreme Court recently emphasized this point, explaining that public officials

11  must "bear in mind broader public-policy implications," whereas private litigants—like

12  DCCC—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 196 (citing

13  *Trbovich*, 404 U.S. at 538–39). Thus, the Supreme Court cautioned that courts should

14  not conduct the adequacy of representation analysis at too "high [a] level of abstraction,"

15  and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden

16  to demonstrate inadequate representation remains "minimal" unless those interests are

17  "identical." *Id.* at 196 (citation omitted); *cf. United Guar. Residential Ins. Co. v. Phila.*

18  *Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987) (explaining that, under *Trbovich*,

19  "when a party to an existing suit is obligated to serve two distinct interests, which,

20  although related, are not identical, another with one of those interests should be entitled

21  to intervene"). In other words, even if Governor Newsom and Secretary Weber oppose

22  the relief that Plaintiffs seek at a high level of abstraction, it does not follow that they

23

24

25  _____

26  [3] *Tangipa* itself reflects how DCCC at times approached the litigation in a distinct way
    from the state defendants. For example, DCCC alone moved to compel deposition
27  testimony from various Plaintiffs, *see Tangipa*, ECF No. 108, and proceeded to take the
    lead in conducting most of those depositions. Similarly, DCCC also presented experts
28  who raised materially distinct analyses than that offered by the state defendants' expert.

share the same interests as a private political organization committed to improving its electoral chances. *See Berger*, 597 U.S. at 196.

At bottom, the governmental Defendants do not stand in the same shoes as DCCC and thus do not adequately represent their interests, which plainly are at stake in this case, as demonstrated by DCCC's intervention in the related *Tangipa* case.

## II.    DCCC should, alternatively, be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. The terms of Rule 24(b) are readily satisfied: DCCC asserts a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter in view of DCCC's timely motion. Fed. R. Civ. P. 24(b)(1)(B), (b)(3). DCCC has moved promptly, *see supra* Argument § I.A, and agrees to abide by deadlines set by the Court, meaning there will be no delay or prejudice. And DCCC's defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. B (Proposed Answer).

The Ninth Circuit has also identified additional considerations the Court can weigh in evaluating permissive intervention requests. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Those considerations—including the proposed intervenors' interests, the inadequacy of the representation of those interests, and the intervenors' contribution to the factual and legal issues, *see id.*—buttress the case for intervention here.

*First*, DCCC has enormous interests at stake. It seeks to defend legislation that is not merely helpful to DCCC, but which DCCC participated in by submitting a map to the legislature. *See* Ex. A, Van Nuys Decl. ¶¶ 9–13. These considerations give DCCC an uncommonly strong and acute interest in this suit. *Second*, DCCC's parochial interests are not identical to the public interests of the existing, governmental defendants, and may not be fully advanced without their intervention. *See supra* Argument § I.C. *Finally*, DCCC will contribute to the "full development of the underlying factual issues in the suit

12

and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). DCCC's involvement in the related *Tangipa* litigation illustrates why intervention here may benefit the Court in resolving the relevant legal and factual issues. For example, in addressing the analysis by the plaintiffs' expert in *Tangipa*, Dr. Sean Trende, the Court relied significantly on the rebuttal analysis by Dr. Jonathan Rodden, an expert retained by DCCC. *See Tangipa*, ECF No. 216 ("Dr. Rodden persuasively contests Dr. Trende's conclusions . . . ."). The Court similarly cited analysis by another of DCCC's experts, Dr. Maxwell Palmer, in dispensing with the plaintiffs' arguments as to the Prop 50 maps as a whole. *Id*. at 47–48.

"Courts often allow the permissive intervention of political parties in actions challenging voting laws for exactly th[ese] reason[s]." *Democratic Party of Va. v. Brink*, No. 3:21-CV-00756-HEH, 2022 WL 330183, at *2 & n.5 (E.D. Va. Feb. 3, 2022) (collecting cases); *see also Ariz. All. for Retired Ams. v. Hobbs*, No. 2:22-cv-01374-GMS, 2022 WL 4448320, at *3 (D. Ariz. Sep. 23, 2022) (collecting cases); *Nielsen v. DeSantis*, No. 4:20-cv-00236-RH-MJF, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020) (granting permissive intervention to Republican-affiliated organizations "with experienced attorneys who might well bring perspective that others miss or choose not to provide"); *Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020) (similar); *Paher*, 2020 WL 2042365, at *4 (similar).

In short, because Rule 24 must be liberally construed to protect DCCC's rights and interests, and because DCCC's participation will assist rather than prejudice efficient development and resolution of this case, the Court should grant permissive intervention if it does not find that DCCC may intervene as a matter of right.

## **CONCLUSION**

DCCC respectfully requests that this Court grant its motion to intervene as a matter of right—or, in the alternative, grant permissive intervention.

13

Dated: January 27, 2026

Respectfully submitted,

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri (CA Bar No. 301236)
Christopher D. Dodge* (DC Bar No. 90011587)
Max Accardi* (DC Bar No. 90021259)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498
lmadduri@elias.law
cdodge@elias.law
maccardi@elias.law

Abha Khanna* (WA Bar No. 42612)
Tyler L. Bishop (CA Bar No. 337546)
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
akhanna@elias.law
tbishop@elias.law

Omar Qureshi (CA Bar No. 323493)
Max Schoening (CA Bar No. 324643)
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478
omar@qureshi.law
max@qureshi.law

*Counsel for Proposed Intervenor-Defendant DCCC*

* *Pro hac vice application forthcoming*

14

1

**CERTIFICATE OF COMPLIANCE**

2   The undersigned, counsel of record for Proposed Intervenor-Defendant DCCC,

3 certifies that this brief contains 4,413 words, which complies with the word limit of Local

4 Rule 11-6.1.

5

6   Dated: January 27, 2026    */s/ Lalitha D. Madduri*
                   Lalitha D. Madduri

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28