BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
1301 Dove Street, 5th Floor
Newport Beach, CA 92660
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

PUBLIC INTEREST LEGAL FOUNDATION
J. CHRISTIAN ADAMS*
KAYLAN PHILLIPS*
JOSEPH M. NIXON*
JEWEL M. LIGHTFOOT*
CAROLYN C. VALDES*
107 S. West Street
Alexandria, VA 22314
Telephone: (703) 745-5870

**Pro hac vice*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCH NOYES, HOLDEN LOMELI, and ANTHONY MCBROOM,<br><br>Plaintiffs,<br><br>vs.<br><br>GAVIN NEWSOM, in his official capacity as Governor of California; and SHIRLEY WEBER in her official capacity as California Secretary of State,<br><br>Defendants. | Case No.: 2:25-cv-11480-JLS-WLH-KKL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE AND OPPOSITION TO DCCC'S MOTION TO INTERVENE** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..................................................................................................- 1 -

ARGUMENT ..........................................................................................................- 1 -

I.   This Court Should Deny Intervention as of Right. ..........................................- 2 -

   A.  DCCC Has No "Significantly Protectable Interest" that will be Impaired by this Litigation .................................................................................................- 2 -

     1.  DCCC's Alleged Interest in Promoting Democrats' Electoral Prospects Is Not a Significant Protectable Interest. ..................................................- 2 -

     2.  DCCC's Alleged Interest in Defending the Legality of the Prop 50 Map Is Not a Protectable Interest. ........................................................................- 5 -

   B.  DCCC Has Not Overcome the Presumption of Adequate Representation. ...- 7 -

     1.  Defendants and DCCC Share the Same Ultimate Objective. .....................- 7 -

     2.  Defendants Will Adequately Defend DCCC's Interests. ............................- 9 -

II.  This Court Should Deny the Request for Permissive Intervention ..................- 12 -

   A.  DCCC Will Duplicate Efforts, Add to the Parties' Burdens, and Cause Undue Delay and Expense if Permitted to Intervene. ..................................................- 12 -

   B.  DCCC Will Not Put Forth Any New Issues or Arguments to Justify Permissive Intervention. ......................................................................................- 14 -

III. DCCC May Participate as *Amicus Curiae* .....................................................- 14 -

IV. If the Court Finds DCCC May Intervene, the Court Should Limit the Scope of its Intervention. ........................................................................................................- 14 -

CONCLUSION ........................................................................................................- 15 -

# TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003)……………………………………………………….4, 9

*Berger v. N.C. State Conference of the NAACP*,
    597 U.S. 179 (2022)………………………………………………………………10-11

*Bost v. Ill. State Bd. of Elections*,
    2022 U.S. Dist. LEXIS 185464 (N.D. Ill. Oct. 11, 2022)……………………...3

*Chamness v. Bowen*,
    722 F.3d 1110 (9th Cir. 2013)……………………………………………………….2

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011)………………………………………………………...7

*Cooper v. Newsom*,
    13 F.4th 857 (9th Cir. 2021)…………………………………………………………2

*Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*,
    974 F.2d 450 (4th Cir. 1992)……………………………………………………….15

*Conservation Cong. v. United States Forest Serv.*,
    2005 U.S. Dist. LEXIS 56166 (E.D. Cal. May 19, 2005)…………………14-15

*Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*,
    642 F.3d 728 (9th Cir. 2011)……………………………………………………….15

*Doe v. Schwarzenegger*,
    2007 U.S. Dist. LEXIS 8501 (E.D. Cal. Jan. 17, 2007)……………………….15

*Donald J. Trump for President, Inc. v. Bullock*,
    2020 U.S. Dist. LEXIS 167715 (D. Mont. Sep. 14, 2020)……………....5, 15

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998)………………………………………………………...4

*Earth Island Inst. v. Evans*,
    136 F. App'x 34 (9th Cir. 2005)……………………………………………………8

*Emeryville v. Robinson*,
    621 F.3d 1251 (9th Cir. 2010)………………………………………………………4

*Issa v. Newsom*,
    2020 U.S. Dist. LEXIS 102013 (E.D. Cal. June 10, 2020)………………..3, 8

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022)………………………………………………………..3

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997)……………………………………………………..11

*Northland Family Planning Clinic, Inc. v. Cox*,
    487 F.3d 323 (6th Cir. 2007)......................................................................4-5

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996).........................................................................11

*Or. Env't Council v. Or. Dep't of Env't Quality*,
    775 F. Supp. 353 (D. Or. 1991)....................................................................8

*Paher v. Cegavske*,
    2020 U.S. Dist. LEXIS 74095 (D. Nev. Apr. 28, 2020)...............................3

*Palomar Pomerado Health Sys. v. Belshe*,
    180 F.3d 1104 (9th Cir. 1999)......................................................................1

*Perry v. Proposition 8 Off. Proponents*,
    587 F.3d 947 (9th Cir. 2009)............................................................7, 11-12

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006)....................................................................6-7

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983)......................................................................10

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001)........................................................................4

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004)........................................................................2

*United States v. Los Angeles*,
    288 F.3d 391 (9th Cir. 2002).................................................................7, 11

*United States v. Union Elec. Co.*,
    64 F.3d 1152 (8th Cir. 1995)........................................................................4

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991)..................................................................5, 10

**Rules**

Fed. R. Civ. P. 24(a)...........................................................................................1

Fed. R. Civ. P. 24(b).........................................................................................12

Plaintiffs respond to the motion to intervene filed by the Democratic Congressional Campaign Committee ("DCCC") and respectfully request denial of its motion. Plaintiffs do not request a hearing on DCCC's motion.

## INTRODUCTION

DCCC seeks to disrupt this litigation purely for partisan and ideological reasons. DCCC merely *prefers* one outcome over another, and its ideological opposition to Plaintiffs' case does not merit intervention.

The motion to intervene should be denied for several reasons. First, DCCC has no "significantly protectable interest" in the subject matter of this case that will be impaired by the litigation. DCCC claims it has an interest in promoting Democrats' electoral prospects and defending the legality of the map it helped propose. These interests are merely political and ideological and are insufficient to support intervention as of right.

Next, DCCC fails to demonstrate that Defendants will not adequately protect its interests. Defendants are legally bound to defend the constitutionality of California's laws, *Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1107 (9th Cir. 1999) (affirming the principle that neither a state nor its subdivisions may challenge state statutes in federal courts on federal constitutional grounds), and Defendants share the same ultimate goal as DCCC—upholding the validity of the Prop 50 Map. There is every indication that Defendants will vigorously defend this case and protect the DCCC's interests.

DCCC also fails to satisfy the requirements for permissive intervention as there is evidence that any value DCCC will add to this case is far outweighed by the additional burdens and prejudice to the parties already involved.

## ARGUMENT

The Ninth Circuit requires an applicant for intervention as of right under Fed. R. Civ. P. 24(a)(2) to demonstrate that:

(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the

- 1 -
RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

*Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013). "The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (emphasis in original). Plaintiffs do not challenge whether the motion to intervene was timely. However, because DCCC fails to meet the other three requirements, its motion should be denied.

**I.     This Court Should Deny Intervention as of Right.**

**A.     DCCC Has No "Significantly Protectable Interest" that will be Impaired by this Litigation.**

A proposed intervenor has a "significant protectable interest" if "the interest is protected by law and there is a relationship between that interest and the claim or claims at issue." *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021). "A significant protectable interest will be found if a legally protected interest will suffer a practical impairment in the pending litigation." *Id.* (internal citations omitted). DCCC claims its protectable interests are (1) promoting Democrats' electoral prospects and (2) defending the legality of the map it helped propose—neither of which is a significantly protectable interest.

**1.     DCCC's Alleged Interest in Promoting Democrats' Electoral Prospects Is Not a Significant Protectable Interest.**

First, DCCC's interest in promoting Democrats' electoral prospects by itself is not a significant protectable interest. DCCC argues its interest in electoral success is a significant protectable interest, but in the cases cited by DCCC for this proposition, the potential intervenors alleged more than just a general interest in electoral success. *See Issa v. Newsom*, 2020 U.S. Dist. LEXIS 102013, at *7-8 (E.D. Cal. June 10, 2020) ("The Proposed Intervenors cite three protectable interests as the basis for their intervention: (1) asserting the rights of their members to vote safely without risking

their health; (2) advancing their overall electoral prospects; and (3) diverting their limited resources to educate their members on the election procedures."); *Paher v. Cegavske*, 2020 U.S. Dist. LEXIS 74095, at *6 (D. Nev. Apr. 28, 2020) ("Proposed Intervenors argue that Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates, and individual intervenor John Solomon's plan to vote by mail."). These cases suggest DCCC's amorphous and vague interest in electoral success is insufficient on its own to be a significant protectable interest.

Other district courts have similarly allowed intervention upon a showing of more than a general, non-specific interest in electoral success. *See Bost v. Ill. State Bd. of Elections*, 2022 U.S. Dist. LEXIS 185464, at *8 (N.D. Ill. Oct. 11, 2022) (finding Democratic Party of Illinois' "interest in its resource allocation is a sufficient interest that may be impaired by this action").

Circuit Courts have also recognized more than a general political or ideological interest establishes a significant protectable interest. For example, the Fifth Circuit found that the Republican Committees attempting to intervene demonstrated a significant protectable interest because they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process" and the legislation at issue "unquestionably regulates the conduct of the Committees' volunteers and poll watchers." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). The Fifth Circuit explained the Republican Committees' interest "goes beyond a purely 'ideological' reason for intervention and amounts to a 'direct' and 'substantial' interest in the proceedings." *Id.*

Similarly, the Sixth Circuit reasoned that an organization with only an ideological interest in litigation that did not regulate the potential intervenor's conduct in any way did not have a substantial legal interest in the outcome of the case. *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345-46 (6th Cir. 2007).

DCCC's interest in promoting Democrats' electoral prospects is also not a protectable interest because there is no relationship between the interest and the litigation as DCCC's interest will not suffer a practical impairment. *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998) ("An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant."). DCCC has not made a showing or presented any evidence to demonstrate that it will be "substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). Regardless of whether the Prop 50 Map is found unconstitutional, DCCC can promote Democrats' electoral prospects in the upcoming election.

What's more, election results are difficult to predict and to the extent DCCC believes the Prop 50 Map increases its chances of electoral success, that interest is speculative, at best. *Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) ("Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." (citing *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)). The speculative impact on DCCC's electoral prospects is insufficient to show "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests." *Berg*, 268 F.3d at 818.

Because "[c]ourts are guided primarily by practical and equitable considerations," *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), this Court should be hesitant to accept DCCC's argument that a general political interest in the outcome of the litigation is sufficient for mandatory intervention. DCCC's position would open the gate to any number of potential intervenors with a political or ideological interest in the outcome of litigation efforts. If the Court were to accept DCCC's position, any organization with political goals would have a significant

protectable interest in any case that touches political ideology. It would not be practical or equitable to open the door to these many potential intervenors. *See Donald J. Trump for President, Inc. v. Bullock*, 2020 U.S. Dist. LEXIS 167715, at *6 (D. Mont. Sep. 14, 2020) (denying mandatory intervention in part because proposed intervenor's interests were "ensuring its voter education efforts are not undermined and that its members can exercise their franchise" and explaining, "[i]f this Court were to permit the LWVMT to intervene on this basis alone, it would be hard pressed to deny future motions seeking intervention from any number of the hundreds of organizations who engage in such efforts from a partisan or nonpartisan standpoint. As a matter of practicality and equity, the Court cannot permit this action to be overwhelmed by any number of groups seeking to protect similar interests.").

Without limitation on the significant protectable interest required for intervention, "Rule 24 would be abused as a mechanism for the over-politicization of the judicial process." *Northland Family Planning Clinic, Inc.*, 487 F.3d at 346. To prevent that sort of abuse, DCCC's attempt to intervene should be denied.

### 2. DCCC's Alleged Interest in Defending the Legality of the Prop 50 Map Is Not a Protectable Interest.

DCCC also fails to assert a protectable interest by saying it merely "supported the efforts of Proposition 50, including by purchasing and submitting *a version* of Mitchell's map to the California Legislature." Mot. at 8 (emphasis added) DCCC has not clarified its role, if any, in proposing the Prop 50 Map. While Ninth Circuit precedent suggests that sponsors of ballot initiatives have a significant protectable interest, *see Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991), *vacated as moot*, *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), DCCC has not put forth any evidence or asserted that it sponsored the ballot initiative or was a public proponent for the Prop 50 Map.

In support of its motion, the DCCC attaches an affidavit of Mr. Van Nuys that it filed in support of its motion to intervene in *Tangipa v. Newsom*, No. 2:25-cv-

10616-JLS-WLH-KKL (C.D. Ca. Nov. 5, 2025). The DCCC does not attach any affidavit specific to the litigation in which it seeks to intervene here.

Before the Court in *Tangipa,* Mr. Van Nuys asserted that DCCC purchased a "revised version of the Draft Map" from Redistricting Partners and submitted the map it received to the California legislature. ECF No. 47-1, at ¶¶12-13. Mr. Van Nuys also said in *Tangipa* that "[t]he map that ultimately was adopted by the state Legislature and put forward to California voters *appears likely* to achieve *similar partisan outcomes* to the map DCCC submitted on August 15, 2025." *Id.* at ¶14 (emphasis added). The *Tangipa* affidavit is void of any facts tying the map that DCCC submitted to the legislature to the Prop 50 Map, aside from "appear[ing] likely to achieve similar partisan outcomes." DCCC's involvement in *a* map may be established, but DCCC's involvement with the map *at issue in this litigation* is not.

There is also no evidence of DCCC's involvement in the passage of Prop 50. DCCC has not claimed that it sponsored the legislation or was a proponent for Prop 50 prior to the statewide vote on the referendum. Mr. Van Nuys's *Tangipa* affidavit does not put forth any facts demonstrating DCCC's efforts in campaigning for Prop 50. Instead, Mr. Van Nuys' *Tangipa* affidavit stated that during the campaign for Prop 50, "DCCC was actively tracking ads and campaign materials on both sides." ECF No. 47-1, at ¶15. Mr. Van Nuys' *Tangipa* affidavit asserted that Democrats "fought a fierce political campaign over Proposition 50," but he did not say DCCC had any role in this "fierce political campaign." *Id.*

The lack of evidence and allegations of direct involvement stands in stark contrast to the cases DCCC cites where proponents of a ballot initiative actively worked on the passage of the initiative at issue. *See Prete v. Bradbury*, 438 F.3d 949, 955 (9th Cir. 2006) (one proposed intervener "was chief petitioner for the measure" and the other proposed intervenor "was a main supporter of the measure"). Here, DCCC presents no factual evidence specific to this case, is ambiguous about its role

and involvement related to Prop 50 and does not come close to meeting its burden to demonstrate it has a significant protectable interest in this litigation.

### B. DCCC Has Not Overcome the Presumption of Adequate Representation.

Even if DCCC has a significant protectable interest, Defendants share the same objective and protect DCCC's interest far beyond the inadequacy standard for intervention. Defendants are zealously, competently, and fully protecting DCCC's interests and DCCC has not overcome the presumption of adequate representation.

To determine whether the existing parties adequately represent an applicant's interest, courts consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*United States v. Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).

"Although the burden of establishing inadequacy of representation may be minimal, the requirement is not without teeth." *Prete*, 438 F.3d at 956. The "most important factor in assessing the adequacy of representation is how the interest compares with the interests of existing parties. If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). "[T]he intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 951 (9th Cir. 2009). DCCC and Defendants share the same interests and ultimate objective and DCCC has failed to make a compelling showing that Defendants will not adequately protect DCCC's interests.

#### 1. Defendants and DCCC Share the Same Ultimate Objective.

Defendants share the same ultimate objective as DCCC—upholding the validity of the Prop 50 Map. They both oppose the relief Plaintiffs seek and they are

defending the Prop 50 Map on the ground that it was constitutionally drawn. DCCC's interest in promoting Democratic candidates aligns with Defendants' interest in defending the constitutionality of the Prop 50 Map. Thus, a presumption arises that Defendants adequately represent DCCC's interests. DCCC has failed to present a compelling showing of inadequate representation and therefore fails to overcome the presumption of adequate representation by Defendants.

DCCC attempts to sidestep its unity of interest with Defendants by pointing to DCCC's "unique partisan, competitive, and reputational interests." ECF No. 47 at 9. However, these are insufficient for several reasons.

First, at best, DCCC's stated interests are better characterized as its *motives* in pursuing this litigation, rather than a significant protectable interest. And a difference in motivation to litigate is insufficient to show inadequacy of litigation. *See Earth Island Inst. v. Evans*, 136 F. App'x 34, 36 (9th Cir. 2005) (citing *Or. Env't Council v. Or. Dep't of Env't Quality,* 775 F. Supp. 353, 359 (D. Or. 1991)).

DCCC's asserted interests are also not meaningfully distinct from Defendants' in light of the facts here, starting most importantly with Defendants' litigating position. Redistricting cases differ from other election-related cases because they naturally invoke partisan politics. California will plainly respond to the racial gerrymandering claim here by claiming that its justification for redistricting, and for the Prop 50 Map specifically, was to add five more Democrat Congressional seats— the precise *partisan* interest that DCCC claims is "unique" to it. *Cf.* Brief for Respondents Newsom and Weber at 6, *Tangipa v. Newsom*, No. 25A843 (U.S. 2026). This is surely not a situation where the State is defending a politically *neutral* election-related statute. *Cf. Issa*, 2020 U.S. Dist. LEXIS 102013, at *3 (involving a statewide requirement that all counties implement all-mail ballot elections). Rather, the Prop 50 Map was openly put forward to gain partisan advantage for one group— specifically the partisan advantage that DCCC supports and the group that DCCC

- 8 -
RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

ideologically represents. As such, DCCC's "unique partisan" interests are not at all unique, as they are shared directly and in conformity with Defendants' interests.

What's more, the State Defendants are members of the Democratic Party[1] and the political makeup of California reflects an allegiance to the Democratic Party. Of the 52 United States Congressmen California has, 43 of them are Democrats.[2] Of the 60 members in the California State Assembly, 40 of them are Democrats.[3] Of the 40 seats in the California State Senate, Democrats hold 30 of them.[4] The synonymity of Defendants and DCCC makes the shared ultimate goal clear at a granular and practical level—not a "high level of abstraction" as DCCC asserts.

Because Defendants are effectively and "uniquely" *aligned* with the Democratic Party and the interests of Defendants and DCCC are identical, DCCC must make a "compelling showing" that Defendants will not adequately defend its interests. DCCC has not made such a showing.

### 2. Defendants Will Adequately Defend DCCC's Interests.

Beyond the general standard that "the State and its subdivisions must make all arguments to defend the constitutionality of its laws," *Arakaki*, 324 F.3d at 1087, this case represents a rare instance where there is evidence available to the Court to demonstrate Defendants will vigorously defend the constitutionality of the Prop 50 Map, namely, Defendants' actions in another challenge to Prop 50. *Tangipa v. Newsom*, No. 2:25-cv-10616-JLS-WLH-KKL (C.D. Cal. Nov. 5, 2025). While *Tangipa* and this case present distinct claims, because they both concern the Constitutionality of the Prop 50 Map, this Court has seen the vigorous and zealous advocacy the State Defendants exhibited to defend the Prop 50 Map, advocacy that

---

[1] *Shirley Weber*, BALLOTPEDIA, https://ballotpedia.org/Shirley_Weber; *Gavin Newsom*, BRITTANICA, https://www.britannica.com/biography/Gavin-Newsom.
[2] *List of United States Representatives from California*, BALLOTPEDIA (Jan. 2026), https://ballotpedia.org/List_of_United_States_Representatives_from_California.
[3] *Members*, CALIFORNIA STATE ASSEMBLY (2026), https://www.assembly.ca.gov/assemblymembers.
[4] *Senators*, CALIFORNIA STATE SENATE (2026), https://www.senate.ca.gov/senators#top.

has continued all the way to the Supreme Court of the United States. Brief for Respondents Newsom and Weber, *Tangipa v. Newsom*, No. 25A839 (U.S. 2026).

This showing of more-than-adequate representation and advocacy (and the identical interests between Defendants and DCCC) stands in stark contrast to cases where this Circuit found a proposed intervenor's interests were not adequately defended. In *Yniguez v. Arizona*, the Ninth Circuit found the proposed intervenors were not adequately represented because the governor defendant decided not to appeal the district court's order on the merits and "no representation constitutes inadequate representation." 939 F.2d at 737. In *Sagebrush Rebellion*, the court found the proposed intervenor's interests were not adequately protected by the defendant because prior to defendant's cabinet appointment, the party-defendant to the case had been the director of the public interest group representing the plaintiffs in the litigation. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

The Supreme Court has similarly found that prior public opposition to the legislation in controversy and conflicting interests can be evidence of inadequate representation. In *Berger v. N.C. State Conference of the NAACP*, 597 U.S. 179 (2022), the Supreme Court found the proposed intervenors' (speaker of the State House of Representatives and president pro tempore of the State Senate) interests were not adequately protected by defendants (the Governor and Board of Elections) in part because important state interests would not be adequately represented in light of the Governor's opposition to the bill at issue, the Board's allegiance to the Governor, and the attorney general's opposition to earlier voter identification efforts. 597 U.S. at 198 ("Throughout, Board members have been appointed and potentially removable by a Governor who vetoed S. B. 824 and who filed his own briefs in this litigation calling the law 'unconstitutional' and arguing that it 'should never go into effect.' And at all times, the Board has been represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's

administrative concerns."). No such evidence of conflicting interests or inadequate representation exists in this case.

DCCC has not pointed to any necessary elements Defendants neglected or any arguments DCCC would make that Defendants did not or would not. *Los Angeles*, 288 F.3d at 398. Nor has DCCC pointed to any "substantive disagreement" between Defendants and DCCC. Instead, DCCC cites the work it did in the *Tangipa* case as evidence that it approaches the litigation distinct from the Defendants and that Defendants do not adequately represent DCCC's interests. However, the examples DCCC puts forth (moving to compel depositions, "taking the lead" on depositions, and presenting its own experts in addition to Defendants' experts, ECF No. 47 at 11 n.3), do nothing more than demonstrate a difference in litigation strategy which is insufficient to demonstrate inadequate representation. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997) ("When a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has rested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status.").

The Ninth Circuit reaffirmed the requirement that a potential intervenor produce more than just examples of difference in litigation strategy and said, "As we have held, 'mere[] differences in [litigation] strategy … are not enough to justify intervention as a matter of right.'" *Perry*, 587 F.3d at 954 (citing *United States v. Los Angeles*, 288 F.3d 391, 402-03 (9th Cir. 2002)); *see also Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (holding "minor differences in opinion" between the parties and proposed intervenor "fail[ ] to demonstrate inadequacy of representation").

*Tangipa* demonstrates how Defendants mounted a full-fledged defense and articulated similar, if not the same, arguments as DCCC in their responses to *Tangipa* plaintiffs' motions for preliminary injunction. *See Tangipa*, ECF Nos. 112 (DCCC

Response in Opposition to Motion for Preliminary Injunction) & 113 (State Defendants' Response in Opposition to Motion for Preliminary Injunction).

There can be no doubt that Defendants will adequately defend DCCC's interests in this case. DCCC therefore fails to overcome the presumption of adequate representation and its motion to intervene must be denied.

## II. This Court Should Deny the Request for Permissive Intervention.

Under Fed. R. Civ. P. 24(b), a court may permit a party to intervene if: "(1) independent grounds for jurisdiction; (2) the motion is timely filed; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Northwest Forest Res. Council*, 82 F.3d at 839. Under Rule 24(b), the Court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Perry*, 587 F.3d at 955. DCCC fails to meet the requirements for permissive intervention and will cause undue delay and prejudice to the original parties.

### A. DCCC Will Duplicate Efforts, Add to the Parties' Burdens, and Cause Undue Delay and Expense if Permitted to Intervene.

DCCC will hinder the litigation efforts and cause the parties and the Court undue burden in this case as they have already caused confusion and demonstrated a lack of care to treat this case as the distinct case it is. Exhibit A to DCCC's motion to intervene is merely the declaration it filed in *Tangipa*. Instead of providing a declaration specific to the claims raised in Plaintiffs' complaint, the DCCC recycled an affidavit from a distinct case with wholly different claims and paragraph numbers. This lack of care and attention to detail have already caused additional burdens on Plaintiffs in this case and will cause burden to this Court.

A few examples illustrate the point. In Mr. Van Nuys' *Tangipa* affidavit, he affirmed that he "reviewed the Complaint filed in this case" and swore, "I understand that Plaintiffs have alleged that DCCC 'paid Redistricting Partners to draw the map' set out in Proposition 50." ECF No. 47-1 at ¶18. Nowhere in Plaintiffs' complaint do

they allege DCCC "paid Redistricting Partners to draw the map." The paragraphs Mr. Van Nuys cites for the proposition that Plaintiffs alleged DCCC paid Redistricting Partners to draw the map discuss the key to an illustrative map and allege that Defendants violated the Fifteenth Amendment and Section 2(a) of the Voting Rights Act by maintaining two Black influence districts. ECF No. 47-1 at ¶18; ECF No. 1 at ¶¶51-52. Repurposing the affidavit does not work when the complaints in the two cases are substantially different—not just different paragraph numbers, but different allegations altogether.

The DCCC and its many attorneys' attempt to "repurpose" an affidavit from a different case that does not apply to this case calls into question the value DCCC will add to this case. Based on the inapplicable affidavit, DCCC has shown that it may cause more confusion and work for the other attorneys and the Court. Such added burden and hindrance is undue and weighs heavily against granting DCCC permissive intervention.

DCCC has further demonstrated no unique interest, perspective, or knowledge. DCCC confirms this in its Proposed Answer, where it explains that it "lack[s] sufficient information" as to dozens of paragraphs in Plaintiffs' complaint. *See generally* ECF No. 47-2.

Allowing DCCC to intervene would cause undue delay that would hinder the Court's ability to decide this election-related case in an election year. Given the subject matter of the litigation and the timing of the case in general, any delay has the potential to impede the Court's ability to determine these important Constitutional issues at a speed that informs and guides the upcoming election. Permitting intervention and allowing another party with its own slew of attorneys (over doubling the number of attorneys on the opposing side) would delay this Court's efforts to resolve this case on the merits.

### B. DCCC Will Not Put Forth Any New Issues or Arguments to Justify Permissive Intervention.

Similar to the situation in *Conservation Cong. v. United States Forest Serv*, here, "there is no indication that [DCCC] would, through its intervention, raise any new issues or put forth any arguments that the government will not vigorously assert." 2005 U.S. Dist. LEXIS 56166, at *3 (E.D. Cal. May 19, 2005). DCCC fails to identify any difference in the defense it will mount compared to the defense Defendant will mount and has not pointed to any evidence demonstrating that Defendant will not adequately and vigorously put forth all of the necessary arguments. DCCC's intervention will only serve to duplicate Defendants' efforts rather than bring anything new or valuable to the litigation.

### III. DCCC May Participate as *Amicus Curiae*.

Plaintiffs do not oppose the DCCC filing *amicus curiae* briefs to offer their concerns without causing delay, complication, and prejudice to the parties that will inevitably arise from the addition of a politically motivated intervenor. *See Conservation Cong*, 2005 U.S. Dist. LEXIS 56166, at *3 (denying intervention but allowing *amicus curiae* briefs); *Bullock*, 2020 U.S. Dist. LEXIS 167715, at *2 (same); *Doe v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 8501, at *13 (E.D. Cal. Jan. 17, 2007) (same). Whatever DCCC wants to say about Prop 50's validity, DCCC can just as effectively say it in an *amicus curiae* brief.

### IV. If the Court Finds DCCC May Intervene, the Court Should Limit the Scope of its Intervention.

Should the Court find that the DCCC may intervene either by right or permissively, Plaintiffs respectfully request the intervention be limited in scope. Namely, DCCC may participate in motions practice and must comply with discovery requests as a party-opponent, but for the sake of judicial economy and the added burden to the parties, DCCC may not be permitted to conduct discovery themselves, must share time with Defendants at any hearing or oral argument, and any briefing by DCCC should be limited in word count and in scope. *See Dep't of Fair Emp. & Hous*.

*v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (citing *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992) (providing that "[w]hen granting an application for permissive intervention, a federal district court is able to impose almost any condition")).

## CONCLUSION

For the foregoing reasons, the Court should deny DCCC's motion to intervene.

February 6, 2026

BENBROOK LAW GROUP, PC
  */s/ Bradley Benbrook*
Bradley A. Benbrook
Stephen M. Duvernay

PUBLIC INTEREST LEGAL FOUNDATION
J. Christian Adams
Kaylan Phillips
Joseph M. Nixon
Jewel M. Lightfoot
Carolyn C. Valdes

*Attorneys for the Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,684 words, which complies with the word limit of Local Rule 11-6.1.

Dated: February 6, 2026

  s/ Bradley A. Benbrook
Bradley A. Benbrook