Lalitha D. Madduri (CA Bar No. 301236)
lmadduri@elias.law
Christopher D. Dodge* (DC Bar No. 90011587)
cdodge@elias.law
Max Accardi* (DC Bar No. 90021259)
maccardi@elias.law
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498

Abha Khanna* (WA Bar No. 42612)
akhanna@elias.law
Tyler L. Bishop (CA Bar No. 337546)
tbishop@elias.law
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Omar Qureshi (CA Bar No. 323493)
omar@qureshi.law
Max Schoening (CA Bar No. 324643)
max@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478
F: (213) 277-8989

*Counsel for Proposed Intervenor-Defendant
DCCC*

* *Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCH NOYES, HOLDEN LOMELI, and ANTHONY MCBROOM,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as the Governor of California; SHIRLEY WEBER, in her official capacity as California Secretary of State,<br><br>Defendants. | Case No: 2:25-cv-11480-JLS-WLH-KKL<br><br>**DCCC'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE AS DEFENDANT**<br><br>Hearing Date: Friday, February 27, 2026<br><br>Time: 10:30 a.m.<br><br>Courtroom: 8A |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ............................................................................................... 1

I.     DCCC is entitled to intervene as of right. ................................................ 2

     A.     DCCC has significant interests in preserving Prop 50 and the electoral opportunities it confers on Democratic candidates. ..................... 2

     B.     DCCC's uniquely partisan interests are not adequately represented by the existing parties. ........................................................ 6

II.     Alternatively, the Court should grant DCCC permissive intervention. .............. 10

III.     Plaintiffs have articulated no basis for the Court to preemptively limit the scope of DCCC's intervention. .......................................................... 12

CONCLUSION ................................................................................................ 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. LULAC*,
　146 S. Ct. 418 (2025) .......................................................................3

*Associated Gen. Contractors of Am. v. California Dep't of Transp.*,
　No. 09-01622, 2009 WL 5206722 (E.D. Cal. Dec. 23, 2009) ...............10, 12

*Barke v. Banks*,
　No. 8:20-cv-00358-JLS-ADS, 2020 WL 2315857
　(C.D. Cal. May 7, 2020) ...................................................................10

*Berger v. N.C. State Conf. of the NAACP*,
　597 U.S. 179 (2022) ...................................................................2, 7, 8

*Bost v. Illinois State Bd. of Elections*,
　No. 22-CV-02754, 2022 WL 6750940 (N.D. Ill. Oct. 11, 2022)...................3

*Bost v. Illinois State Bd. of Elections*,
　No. 24-568, 2026 WL 96707 (U.S. Jan. 14, 2026) .......................................5

*Callahan v. Brookdale Senior Living Cmtys.*,
　42 F.4th 1013 (9th Cir. 2022).............................................................11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
　647 F.3d 893 (9th Cir. 2011)..........................................................5, 6, 9, 10

*Fund for Animals, Inc. v. Norton*,
　322 F.3d 728 (D.C. Cir. 2003) ...........................................................6, 10

*GHP Mgmt. Corp. v. City of Los Angeles*,
　339 F.R.D. 621 (C.D. Cal. 2021) .........................................................8, 10

*Hoopa Valley Tribe v. U.S. Bureau of Reclamation*,
　648 F. Supp. 3d 1196 (E.D. Cal. 2022).....................................................6, 7

*Issa v. Newsom*,
    No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal.
    June 10, 2020) ................................................................................4, 7

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) ......................................................6, 8, 10

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ...............................................................8

*Nat. L. Party v. FEC*,
    111 F. Supp. 2d 33 (D.D.C. 2000) .......................................................4

*Nielsen v. DeSantis*,
    No. 4:20-cv-00236-RH-MJF, 2020 WL 6589656
    (N.D. Fla. May 28, 2020) ...................................................................11

*Northland Family Planning Clinic, Inc. v. Cox*,
    487 F.3d 323 (6th Cir. 2007) ...............................................................3

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) .................................................................2

*Owen v. Mulligan*,
    640 F.2d 1130 (9th Cir. 1981) .........................................................3, 5

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ...............................................................5

*Puget Soundkeeper All. v. Wheeler*,
    No. C20-0950-JCC, 2020 WL 5095463 (W.D. Wash. Aug. 28, 2020) ........12

*Shays v. FEC*,
    414 F.3d 76 (D.C. Cir. 2005) ...............................................................4

*Sierra Nevada Forest Prot. Campaign v. Rey*,
    No. CIV-S-050205 MCE GGH, 2005 WL 8148986
    (E.D. Cal. June 16, 2005) ...................................................................10

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) .............................................................11

iii

*Tangipa v. Newsom*,
    No. 2:25-CV-10616-JLS-WLH-KKL, 2026 WL 110585
    (C.D. Cal. Jan. 14, 2026) ....................................................................1, 2, 3, 9

*United Guar. Residential Ins. Co. v. Philadelphia Sav. Fund Soc'y*,
    819 F.2d 473 (4th Cir. 1987) ................................................................9

*United States v. Metro. Water Reclamation Dist. of Greater Chicago*,
    No. 11-C-8859, 2012 WL 3260427 (N.D. Ill. Aug. 7, 2012) ......................13

*United States v. The Doe Run Res. Corp.*,
    No. 4:10CV01895-JCH, 2011 WL 251093 (E.D. Mo. Jan. 25, 2011)..........13

*United States v. U.S. Steel Corp.*,
    No. 2:18-CV-127-JEM, 2018 WL 6573164 (N.D. Ind. Dec. 13, 2018) .......13

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ................................................................2

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991) ..................................................................3

**Constitutional Provisions and Statutes**

Cal. Const. art. V, § 1 ....................................................................................6

Cal. Gov't Code § 12172.5(a)........................................................................8

**Other Authorities**

7C *Wright & Miller's Federal Practice & Procedure* § 1908.1 (3d ed. 2024)........4

7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024)..........10

# **INTRODUCTION**

Plaintiffs' response to DCCC's motion to intervene is puzzling. It begins by stating that DCCC's interest in this case is based on "partisan and ideological reasons" and that DCCC seeks to intervene because it "prefers one outcome over another." *See* Resp. 1 (italicization omitted). DCCC does not dispute those charges. The mystifying question is why Plaintiffs believe they weigh *against* granting DCCC intervention. Plaintiffs do not contest that this lawsuit will likely determine five upcoming congressional elections, potentially resolving which political party controls Congress. For an organization with a "mission . . . to elect Democratic candidates to the U.S. House of Representatives," Van Nuys Decl. ¶ 3, there is no plainer interest, *see id.* ¶¶ 4, 9, 14–21.

Thus, DCCC's interests in this lawsuit are clear, immensely consequential, and, yes, admittedly partisan. And they more than suffice to satisfy Rule 24(a)(2). Plaintiffs' attempt to dismiss DCCC's interests in the Prop 50 map as vague and uncertain is also misplaced. Many courts, including the Ninth Circuit, have recognized the concrete interest political parties have in preserving electoral advantage. And there is nothing vague or uncertain about DCCC's interest: "everyone agrees [Prop 50 is] likely to flip five congressional seats from Republicans to Democrats." *Tangipa v. Newsom*, No. 2:25-CV-10616-JLS-WLH-KKL, 2026 WL 110585, at *1 (C.D. Cal. Jan. 14, 2026). DCCC also cannot simply assume its interests—electoral advantage, partisan gain, and preserving Prop 50—will be adequately represented by governmental defendants charged with evenhandedly defending California law. Rule 24(a)(2) is thus satisfied.

Notably, DCCC was granted intervention in and successfully defended against the nearly-identical attack on Prop 50 in the *Tangipa* case, and the experience there proves that DCCC is likely to present unique evidence, raise distinctive arguments, and take different strategic approaches from the governmental defendants—all strong reasons to allow permissive intervention. In *Tangipa*, for example, DCCC alone moved to compel discovery from Plaintiffs and then took the lead in conducting the ensuing depositions,

which helped compile the "mountain of statements reflecting the partisan goals of Proposition 50." *Id.* at \*2. *Tangipa* further confirms DCCC's distinct perspective will aid the Court's adjudication without causing undue delay or prejudice—factors that bolster the case for intervention.

Plaintiffs contend this case raises "identical" issues as *Tangipa*, ECF No. 6 at 1. That admission is itself a strong reason to allow DCCC to intervene here. It would be immensely prejudicial for DCCC to expend resources in *Tangipa*, only to see the same requested injunction granted in an "identical" action in which it was barred from participating. Thus, basic fairness and commonsense further warrant granting permissive intervention.

## I.    DCCC is entitled to intervene as of right.[1]

### A.    DCCC has significant interests in preserving Prop 50 and the electoral opportunities it confers on Democratic candidates.

Under Rule 24(a)(2), "[w]hether an applicant for intervention as of right demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'" *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (citation omitted). The Court need only discern whether DCCC has "claimed an interest in the resolution of this lawsuit that may be practically impaired or impeded[.]" *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022); *see also Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (holding a movant "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation") (citation omitted).

DCCC's practical interest—and its risk of impairment—in this lawsuit could not be more apparent. As this Court already determined, the crux of this dispute is whether California will move forward with a congressional map "that everyone agrees [is] likely

---

[1] Plaintiffs do not challenge DCCC's intervention on timeliness grounds. *See* Resp. 2.

2

to flip five congressional seats from Republicans to Democrats." *Tangipa*, 2026 WL 110585, at *1; *see also id.* at *32 (Lee, J., dissenting) ("To be sure, California's main goal was to add more Democratic congressional seats."); *Abbott v. LULAC*, 146 S. Ct. 418, 420 (2025) (Alito, J., concurring in grant of stay) (observing that "it is indisputable" that California adopted its new map for "partisan advantage pure and simple"); Compl. ¶ 23 (alleging Governor Newsom's "legislative package . . . would replace the 2024 map with five more non-competitive Democrat [sic] congressional districts"). DCCC's overarching mission is to elect more Democrats to Congress. *See* Van Nuys Decl. ¶¶ 3–4, 20. Its practical interest in a congressional map that is universally understood to add five Democratic members to Congress is both paramount and blindingly clear.

Plaintiffs allege that this practical interest is "amorphous and vague." Resp. 3. But there is nothing amorphous or vague about the DCCC's interest in winning more congressional seats for Democrats. And it is hard to fathom a more *concrete* example of a dispute over electoral prospects than this case, where all parties agree not just that the Prop 50 map helps Democrats—but even agree about the *specific number* of seats the map is likely to swing. *See* Compl. ¶ 23. The Ninth Circuit has held that "the potential loss of an election" is sufficiently concrete to give rise to Article III standing, *Owen v. Mulligan*, 640 F.2d 1130, 1132–33 (9th Cir. 1981), which "compels the conclusion" that a party like DCCC satisfies Rule 24 here, *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991). Plaintiffs' suggestion that DCCC's interests are not sufficiently specific is a nonstarter.

Indeed, it is telling that Plaintiffs cannot cite a single instance where a political committee or party entity has been deemed to lack a sufficient interest for intervention in such circumstances. *See* Resp. 2–7 (failing to cite any such case).[2] To the contrary,

---

[2] Plaintiffs cite *Bost v. Illinois State Bd. of Elections*, No. 22-CV-02754, 2022 WL 6750940 (N.D. Ill. Oct. 11, 2022), in this section of their brief, but that decision found that the Democratic Party of Illinois *did* have a protectable interest at stake, *id.* at *3–4.

case law uniformly permits political party intervention where there are colorable interests in electoral advantage. *See* Mot. 7 (collecting cases); *cf. Shays v. FEC*, 414 F.3d 76, 86 (D.C. Cir. 2005) (recognizing the concrete interests candidates have in competitiveness of electoral environment); *Nat. L. Party v. FEC*, 111 F. Supp. 2d 33, 46 (D.D.C. 2000) (similar as to political parties). Plaintiffs try to distinguish these cases, chiefly by noting that several of them involved parties or candidates claiming an interest in preserving resources, in addition to electoral concerns. Resp. 2–3. But none of those decisions *conditioned* intervention on a resources-related interest. Rather, they recognize that interests like "advancing . . . overall electoral prospects" are "routinely found to constitute significant protectable interests." *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). In any event, invalidating the Prop 50 map would *ipso facto* harm DCCC's resources, both by squandering the money it invested in the Prop 50 map and by forcing it to pivot its strategies, investments, and candidate recruitment in California well into the electoral season. *See* Van Nuys Decl. ¶ 3.

Plaintiffs' remaining arguments are limited. They contend any purported interest must be "legally protected." Resp. 2. That requirement appears nowhere in Rule 24, but regardless, DCCC's interest in Prop 50 map *is* legally protected. *See* Compl. ¶¶ 24–25 (describing Prop 50's enactment into law). DCCC's interest in *existing law* that regulates how Democrats compete for office in California is a canonical Rule 24(a) interest. *See* 7C *Wright & Miller's Federal Practice & Procedure* § 1908.1 & n.45 (3d ed. 2024) (explaining "in cases challenging various statutory schemes as unconstitutional . . . courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention") (collecting cases).

---

They further cite the Sixth Circuit's decision in *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345–46 (6th Cir. 2007), but the putative intervenor there was an advocacy organization—not a political party.

4

Plaintiffs also contend it is not *certain* this case will impair DCCC's interests because election outcomes are hard to predict. *See* Resp. 4. Even setting aside that *Plaintiffs* say Prop 50 creates "five more *non-competitive* Democrat [sic] congressional districts," Compl. ¶ 23, Rule 24 does not require "certainty," but only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(a)(2)). And courts have "uniformly rejected" the theory that mere uncertainty about an election's outcome undercuts a party's interest in that election. *Owen*, 640 F.2d at 1132; *cf. Bost v. Illinois State Bd. of Elections*, No. 24-568, 2026 WL 96707, at *3 (U.S. Jan. 14, 2026) (discussing the particularized interests candidates have in the electoral process). Lastly, there is no risk that DCCC's participation will "open the door to . . . many potential intervenors." Resp. 5. There is only one political party committee in existence dedicated specifically to the election of Democrats to the U.S. House of Representatives: DCCC. No other potential intervenor will stand in similar shoes in this case.

Finally, Plaintiffs suggest there is no evidence DCCC was invested in the passage of Prop 50, so DCCC lacks an interest in this case on that basis. Resp. 5–7. That risible notion would come as a shock to the *Tangipa* plaintiffs. *See* Compl. at 11 & ¶¶ 50–51, *Tangipa*, 2:25-cv-10616-JLS-WLH-KKL (C.D. Cal. Nov. 5, 2025), ECF No. 1 (alleging that DCCC "paid for" and "submitted" the Prop 50 map). In any event, DCCC's declarant made clear that DCCC submitted a proposed map to the Legislature that—whether as submitted, or in substance—became the Prop 50 map, and that DCCC carefully monitored the campaign over Prop 50. *See* Van Nuys Decl. ¶¶ 13–17. Ample case law confirms that DCCC's role as a proponent of Prop 50 reflects a significant protectable interest. *See* Mot. 8 (collecting cases). Plaintiffs attempt to distinguish just one of these cases, but that decision simply reiterated past Ninth Circuit law that an organization "may have a protectable interest in defending the legality of a measure it had supported." *Prete*

*v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (citation omitted). For the reasons described, that is clearly the case here.

> ### B. DCCC's uniquely partisan interests are not adequately represented by the existing parties.

DCCC's interests in this litigation are also not adequately represented by the existing parties. This requirement "does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests." *Citizens for Balanced Use*, 647 F.3d at 900. Unless an existing party "will undoubtedly make all of [the proposed intervenor's] arguments," there is "sufficient reason to doubt the adequacy of [the existing party's] representation of [the proposed intervenor's] interest so as to warrant intervention as of right." *Id.* at 900–01. Accordingly, "the burden" of showing inadequacy of representation "is minimal." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) (quoting *Sagebrush Rebellion*, 713 F.2d at 528).

To evade this liberal standard, Plaintiffs claim there is a "presumption" that DCCC's interests are adequately represented by the governmental defendants because they and DCCC share the same "ultimate objective"— defending Prop 50. Resp. 7. This argument cannot survive scrutiny. DCCC's "ultimate objective" is to maximize the electoral prospects for Democratic congressional candidates. Van Nuys Decl. ¶¶ 3–4. In contrast, the "ultimate interest" of Governor Newsom and Secretary Weber is fulfilling their duty to defend duly-enacted California laws. *See* Cal. Const. art. V, § 1 ("The Governor shall see that the law is faithfully executed."). Where there is such a mismatch between a private entity's "parochial" interests and government defendants' obligation to consider the "public welfare," *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998), courts routinely hold that "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is true even where both the government and the proposed intervenor "occupy the same posture in the litigation." *Citizens for Balanced Use*, 647

6

F.3d at 899 (citation omitted) (holding that proposed intervenor-defendant's interest was not adequately represented by existing defendant even though both sought to uphold a challenged order). Courts in this Circuit have thus held that even when DCCC and California officials "fall on the same side of the dispute," DCCC's unique interest in "advancing [Democrats'] overall electoral prospects" is sufficiently different from the state's "interests in the implementation of" state law to warrant intervention. *Issa*, 2020 WL 3074351, at *3.

In other words, DCCC and the governmental defendants do not share the same "ultimate objective" simply because they both oppose Plaintiffs' claims. To hold otherwise—and apply a presumption of adequate representation wherever an intervenor and defendant fall on the same side of the "v"—would impose a heavy burden on *all* potential intervenors, a result inconsistent with the "minimal" burden that courts in this circuit have traditionally applied. *Hoopa Valley Tribe*, 648 F. Supp. 3d at 1204; *see also Berger*, 597 U.S. at 196 (the burden to demonstrate inadequate representation is "minimal" unless the proposed intervenor's interests are "identical" to those of an existing party).

Even if the Court applies such a presumption, the facts here easily rebut it. As DCCC explained, its "unique partisan, competitive, and reputational interests . . . may not be adequately represented by" the governmental defendants. Mot. 9. Plaintiffs' contrary arguments are unpersuasive. *First*, they suggest that DCCC's interests "are better characterized as its *motives* in pursuing this litigation." Resp. 8. Plaintiffs do not elaborate on this mystifying distinction, and it is plainly inconsistent with cases in this circuit holding that political organizations like DCCC have different *interests* in litigation from governmental defendants—not simply different motives. *See* Mot. 6–9 (collecting cases).

*Second*, Plaintiffs argue that because the Prop 50 map itself "was openly put forward to gain partisan advantage for one group—specifically the partisan advantage

7

that DCCC supports and the group that DCCC ideologically represents"—DCCC's interests are the same as the government's. Resp. 8–9. Setting aside that Plaintiffs' concession about Prop 50's partisan motives contradicts their merits theory in this case, this argument ignores both that Secretary Weber did *not* draw or enact the Prop 50 map, and that the government contends Governor Newsom is not a proper defendant for lack of enforcement authority. *See* Defs.' Mem. Supp. Mot. to Dismiss at 20–21, *Tangipa*, 2:25-cv-10616-JLS-WLH-KKL (C.D. Cal. Feb. 11, 2026), ECF No. 226-1 (arguing *Ex parte Young* does not apply to Governor Newsom because he has no "direct role in enforcing Proposition 50"). And Secretary Weber—who is California's "chief elections officer" and who "shall administer the provisions of the Elections Code," Cal. Gov't Code § 12172.5(a)—is duty-bound to "bear in mind broader public-policy implications." *Berger*, 597 U.S. at 196. In contrast, DCCC seeks to vindicate its own partisan rights, "full stop." *Id.*

It does not matter that DCCC shares the same political affiliation as the individual elected officials sued in this case—the Supreme Court and others presume that official capacity defendants are bound to take a broader "view of the public welfare," *Kleissler*, 157 F.3d at 972, that contrasts with DCCC's "narrower" parochial interests. *GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (explaining courts "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented" (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1087 (9th Cir. 2003))). Accordingly, there is no "synonymity of Defendants and DCCC," *contra* Resp. 9—DCCC's "private interests are different in kind from the public interests of the State or its officials." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022). Finally, even if the governmental defendants *did* have partisan interests, because of their public duties, they are "obligated to serve two distinct interests"—meaning that "another

8

with one of those interests should be entitled to intervene." *United Guar. Residential Ins. Co. v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987).

*Third*, Plaintiffs suggest the government's conduct in the parallel *Tangipa* litigation indicates it will vigorously defend Prop 50. *See* Resp. 9–12. But the *Tangipa* proceedings simply underscore the importance of DCCC's involvement. As noted above, DCCC's interests are not adequately represented unless an existing party "will undoubtedly make all of [DCCC's] arguments." *Citizens for Balanced Use*, 647 F.3d at 900–01. That did not happen in *Tangipa*, as the Court's order denying the plaintiffs' preliminary injunction motion shows. For example, DCCC's principal expert prepared a detailed and granular rebuttal of the plaintiff's expert, Dr. Trende—and the Court relied significantly on that expert's analysis in its order. *See Tangipa*, 2026 WL 110585, at *24–25, *26, *27–28. DCCC also contributed to the factual development of the record. It alone moved to compel deposition testimony from various Plaintiffs, DCCC's Ex Parte App. to Compel, *Tangipa*, No. 2:25-CV-10616-JLS-WLH-KKL (C.D. Cal. Dec. 3, 2025), ECF No. 108, and the Court relied on facts brought forth by DCCC in denying the plaintiffs' preliminary injunction motion. *See, e.g.*, *Tangipa*, 2026 WL 110585, at *4. Contrary to Plaintiffs' argument, "[t]his represents more than a mere difference in litigation strategy," but a different perspective on the litigation, informed by DCCC's uniquely partisan interests. *Citizens for Balanced Use*, 647 F.3d at 899.[3]

In response, Plaintiffs cite intervention cases where the existing governmental defendant indicated a reluctance to defend the challenged law. Resp. 9–10. While intervention is undoubtedly proper under those circumstances, Plaintiffs cite no authority suggesting that a refusal by the existing defendant to litigate the case is *necessary* for intervention. Indeed, cases from across the country hold the opposite—that even when

---

[3] DCCC's role in developing the factual record and legal arguments in *Tangipa* also illustrates why its participation as an *amicus* would not be sufficient to vindicate its interests. *Contra* Resp. 14.

both the proposed intervenor and the governmental defendant seek to defend the law, the intrinsic mismatch between private and governmental interests creates a risk of inadequate representation best cured though intervention. *See, e.g.*, *Fund for Animals, Inc.*, 322 F.3d at 736; *Kleisser*, 157 F.3d at 972; *Citizens for Balanced Use*, 647 F.3d at 899; *GHP Mgmt. Corp.*, 339 F.R.D. at 624; *Barke v. Banks*, No. 8:20-cv-00358-JLS-ADS, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (collecting cases).

These holdings are consistent with the commonsense principle that "in most cases . . . the applicant is the best judge of the representation of the applicant's own interests." 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024). That principle should govern here. DCCC sought and obtained intervention in *Tangipa*, and litigated *Tangipa* in tandem with—but in some cases, differently than—the government, in view of its organizational knowledge of Prop 50 and uniquely partisan perspective. DCCC seeks to do precisely the same here, in this follow-on challenge to Prop 50 that (according to Plaintiffs) raises "identical" issues to *Tangipa*. ECF No. 6 at 1.

## II. Alternatively, the Court should grant DCCC permissive intervention.

Even if the Court finds that DCCC has not satisfied Rule 24(a)(2), it should grant DCCC's alternative request for permissive intervention, especially "[g]iven the liberal standards for intervention" applied by courts in this circuit. *Associated Gen. Contractors of Am. v. California Dep't of Transp.*, No. 09-01622, 2009 WL 5206722, at *3 (E.D. Cal. Dec. 23, 2009). As explained, DCCC has enormous interests at stake—the validity of a map that not only significantly increases the electoral prospects of Democratic congressional candidates, but which DCCC played an active role in submitting to the California legislature. Mot. 12–13; Van Nuys Decl. ¶¶ 9–13. This alone warrants intervention. *See Sierra Nevada Forest Prot. Campaign v. Rey*, No. CIV-S-050205 MCE GGH, 2005 WL 8148986, at *2 (E.D. Cal. June 16, 2005) (granting permissive intervention due to proposed intervenor's "large and varied interests" in the litigation).

DCCC will also assist the court in developing the issues and building a complete record. *See* Mot. 12–13. As DCCC pointed out in its motion, courts routinely allow

permissive intervention by partisan groups, who may "bring perspective that others miss or choose not to provide." *Nielsen v. DeSantis*, No. 4:20-cv-00236-RH-MJF, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020). DCCC indisputably brought a different perspective to *Tangipa* that aided the Court in resolving those claims, *supra* § I.B. Even if this difference in perspective is insufficient to warrant intervention as of right, *but see id.*, Plaintiffs cannot reasonably dispute that DCCC's presence in *Tangipa* contributed to the "full development of the underlying factual issues in the suit"—particularly given that DCCC often took the laboring oar in motion practice, discovery, and cross-examination, and was directly involved in the development of Prop 50. *Callahan v. Brookdale Senior Living Cmtys.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Plaintiffs make a half-hearted attempt to dispute this point, arguing that "DCCC fails to identify any difference in the defense it will mount compared to the defense Defendant [sic] will mount," Resp. 14, but Rule 24 imposes no such burden, which would require DCCC to divine the government's approach to future issues in this case. *Cf. Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (explaining adequacy of representation is not based on "the particular issues before the court at the time of the motion").

Plaintiffs suggest in passing that DCCC lacks unique knowledge of this litigation because its Proposed Answer indicates that it "lack[s] sufficient information" to form a belief "as to dozens of paragraphs in Plaintiffs' complaint." Resp. 13. But the majority of those paragraphs simply cite Plaintiffs' expert declaration which accompanied their complaint—and neither DCCC nor State Defendants have yet had the opportunity to depose Plaintiffs' expert or retain experts of their own to rebut his analysis. Plaintiffs' suggestion that DCCC lacks a unique perspective on this litigation because it has not yet formed a view on the granular conclusions of Plaintiffs' expert is, frankly, absurd.

Separately, Plaintiffs contend that DCCC's presence in the case will cause burden and undue delay, but their arguments on this issue are as baffling as they are

unpersuasive. Resp. 12–13. They accuse DCCC of supporting their motion to intervene using the declaration of Will Van Nuys III, which DCCC also submitted in *Tangipa*, and argue that this reflects a "lack of care and attention to detail." *Id.* at 12. This accusation is preposterous. DCCC submitted Mr. Van Nuys's affidavit in the *Tangipa* litigation to set out its organizational knowledge of DCCC's involvement in the Prop 50 map and contacts with Paul Mitchell—which illustrated Prop 50's manifestly partisan purpose in *Tangipa*, just as it does here. Accordingly, Mr. Van Nuys's affidavit *was already record evidence before the Court*. *See* First Am. Joint Exhibit List at 26, *Tangipa*, 2:25-cv-10616-JLS-WLH-KKL (C.D. Cal. Dec. 15, 2025), ECF No. 168, at 26 (listing Mr. Van Nuys's declaration as one of the preliminary injunction exhibits deemed admitted). To submit a different declaration than the one already admitted in parallel litigation would create a needless risk of inconsistencies. This does not evince a "lack of care and attention to detail," but just the opposite: a desire to present a consistent and true factual accounting to the Court.

Plaintiffs otherwise point to nothing to suggest that DCCC's presence will result in additional burden or delay, and given the early procedural posture of the case, DCCC's agreement to abide by any schedule the Court sets, *see* Mot. 12, minimizes any risk of prejudice to the existing parties. *Puget Soundkeeper All. v. Wheeler*, No. C20-0950-JCC, 2020 WL 5095463, at *2 (W.D. Wash. Aug. 28, 2020) (granting motion to intervene where "[t]he parties have yet to engage in discovery or substantive motions practice, which minimizes the possibility of prejudice to any party"); *Associated Gen. Contractors of Am.*, 2009 WL 5206722, at *3 (rejecting baseless assertion that intervention "will cause delay and inefficiency").

### III. Plaintiffs have articulated no basis for the Court to preemptively limit the scope of DCCC's intervention.

Finally, Plaintiffs suggest that if the Court grants DCCC's motion to intervene, it should "limit" the scope of DCCC's intervention. Resp. 14–15. Plaintiffs provide no authority or reasoning to support this request. Even if the Court has discretion to permit

intervention on a limited basis, DCCC respectfully submits that it would be illogical to preemptively delimit the nature and extent of DCCC's participation in this case—which was, until recently, stayed in view of the parallel *Tangipa* proceedings, *see* ECF No. 44, and in which the parties have not yet undertaken any substantial discovery or motion practice. Plaintiffs' request is therefore "premature," and any concerns with the degree of DCCC's participation should be evaluated in due course "to the extent supported by applicable rules and precedent." *United States v. U.S. Steel Corp.*, No. 2:18-CV-127-JEM, 2018 WL 6573164, at *2 (N.D. Ind. Dec. 13, 2018) (granting motion to intervene and declining to preemptively limit scope of intervention); *United States v. The Doe Run Res. Corp.*, No. 4:10CV01895-JCH, 2011 WL 251093, at *4 (E.D. Mo. Jan. 25, 2011) (same); *United States v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 11-C-8859, 2012 WL 3260427 (N.D. Ill. Aug. 7, 2012) (same).

## CONCLUSION

For the reasons above, DCCC respectfully requests the Court grant its motion to intervene as of right, or, in the alternative, grant permissive intervention.

|    |    |    |
|----|----|----|
| 1  | Dated: February 13, 2026 | Respectfully submitted, |

Dated: February 13, 2026

Respectfully submitted,

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri (CA Bar No. 301236)
Christopher D. Dodge* (DC Bar No. 90011587)
Max Accardi* (DC Bar No. 90021259)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498
lmadduri@elias.law
cdodge@elias.law
maccardi@elias.law

Abha Khanna* (WA Bar No. 42612)
Tyler L. Bishop (CA Bar No. 337546)
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
akhanna@elias.law
tbishop@elias.law

Omar Qureshi (CA Bar No. 323493)
Max Schoening (CA Bar No. 324643)
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478
omar@qureshi.law
max@qureshi.law

*Counsel for Proposed Intervenor-Defendant DCCC*

* *Pro hac vice application forthcoming*

14

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Proposed Intervenor-Defendant DCCC, certifies that this brief contains 4,195 words, which complies with the word limit of Local Rule 11-6.1.

Dated: February 13, 2026          */s/ Lalitha D. Madduri*
                                  Lalitha D. Madduri